CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
3/11/2020
JULIA C. DUDLEY, CLERK
BY: s/ J. Vasquez
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| OSCAR A. MARROQUIN and OLGA Y. MARROQUIN, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No.: 5:19-cv-00083<br>)<br>) By: Elizabeth K. Dillon |
| DAN RYAN BUILDERS MID-ATLANTIC, LLC, | )    United States District Judge<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION

Oscar and Olga Marroquin contracted with Dan Ryan Builders Mid-Atlantic, LLC (Dan Ryan) to build a house. The Marroquins bring claims against Dan Ryan for breach of warranty. Dan Ryan removed this case from Frederick County Circuit Court[1] and now moves to compel arbitration pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16. The court held oral argument on this motion on March 4, 2020. For the reasons stated below, the motion to compel arbitration will be granted.

### I. BACKGROUND

The parties executed an Agreement of Sale on September 23, 2017. (Compl. Ex. A, Dkt. No. 1-3.) Pursuant to this agreement, Dan Ryan agreed to sell a residential home located on Lot 00.0195 in Old Dominion Greens Subdivision with a street address of 105 Reedville Court, Stephens City, VA 22655. Plaintiffs also signed a Limited Warranty Agreement issued by Quality Builders Warranty (QBW) Corporation. The Limited Warranty Agreement was attached

---

[1] The removal was based on diversity jurisdiction. 28 U.S.C. § 1332(a). The Marroquins are Virginia citizens, Dan Ryan is a Maryland citizen, and the amount in controversy is $100,000.

to the Agreement of Sale.  (*Id.* Ex. B.)

Plaintiffs allege that they took possession of the Property on or about October 31, 2017. (Compl. ¶ 6.)  Plaintiffs contend that the dwelling as delivered was not free from structural defects, would not pass without objection in the trade, was not constructed in a workmanlike manner, and was not fit for habitation.  (*Id.* ¶¶ 7–9.)  Between February 23, 2018, and May 3, 2018, the Frederick County Inspections Department issued a series of Correction Orders to Dan Ryan concerning issues with the construction of the plaintiffs' home.  (*Id.* ¶ 10, Ex. C.)  In April 2018, Oscar Marroquin emailed Donald Brown, an employee of Dan Ryan, with a list of issues related to the house.  (*Id.* ¶ 11, Ex. D.)  On July 10, 2018, a building code official sent a certified letter to Dan Ryan detailing some of the ongoing issues relating to the home.  (*Id.* ¶ 12, Ex. E.) On September 12, 2018, October 15, 2018, and August 1, 2019, counsel for the Marroquins sent letters detailing issues related to the dwelling.  (*Id.* ¶¶ 13–16, Ex. F, G, H.)  Plaintiffs allege that some of the issues have been addressed, but the issues in the August 1, 2019 letter remain unfixed.  (*Id.* ¶ 17.)  Plaintiffs bring claims for breach of statutory warranty, Virginia Code § 55.1-357, and breach of the Limited Warranty Agreement.

The Sales Agreement has a section titled "Disclaimer of Warranty and Dispute Resolution."  It states:

> Any dispute arising under or pursuant to this Agreement, or in any way related to the Property and/or with respect to any claims arising by virtue of any representations alleged to have been made by Us, or any agents and/or employees thereof . . . which We and You do not resolve by mutual agreement and which does not fall within the scope and jurisdiction of the Limited Warranty Agreement for whatever reason . . . shall be settled and finally determined by arbitration and not in a court of law, irrespective of whether or not such claim arises prior to or after Settlement hereunder.

(Compl. Ex. A ¶ 19(b).)  At the bottom of this section, the Agreement states (in bold, capital

letters): "**PURCHASER ACKNOWLEDGES THAT THIS AGREEMENT IS SUBJECT TO MANDATORY BINDING ARBITRATION.**" Plaintiffs initialed their acknowledgement of this statement. (*Id.*)

The Limited Warranty Agreement also has a mandatory arbitration provision. It sets forth a Complaint and Claim Procedure for faults or defects. (*Id.* Ex. B. ¶ VI.) If items are still disputed following a four-step dispute resolution process,

> disputed items shall be submitted for binding arbitration by QBW to Construction Arbitration Program, administered by DeMars & Associates Limited (CAP-Home), or such other independent arbitration service as may be designated by QBW, for resolution in accordance with the rules and regulations for home warranty disputes of CAP-Home or such other service.

(*Id.* Ex. B ¶ VI, D.)

## II. ANALYSIS

### A. Standard of Review

When addressing a motion to compel arbitration under the FAA, courts apply a standard that is "akin to the burden on summary judgment." *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 85 n.3 (4th Cir. 2016). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995), *cited with approval in Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015). "Where the party 'show[s] genuine issues of material fact regarding the existence of an agreement to arbitrate,' . . . that party is entitled to a jury trial on the issue." *Galloway*, 819 F.3d at 91 (quoting *Chorley Enters.*, 807 F.3d at 564).

## B. FAA

The FAA reflects a "liberal federal policy favoring arbitration agreements." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). The FAA provides that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Upon a finding that an issue is "referable to arbitration under such an agreement," a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Id.* § 3; *Murray v. UFCW Int'l Union*, 289 F.3d 297, 301 (4th Cir. 2002) ("When parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings . . . and compel arbitration in accordance with the agreement's terms.").

A litigant may compel arbitration under the FAA upon the demonstration of: (1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision that purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect, or refusal of the other party to arbitrate the dispute. *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002). "The party seeking to compel arbitration bears the burden of establishing the existence of an arbitration

provision that purports to cover the dispute." *Lovelady v. Five Star Quality Care-VA, LLC*, No. 4:18-cv-18, 2018 WL 3580768, at *7 (E.D. Va. July 25, 2018). "If the party makes this evidentiary showing, the party opposing arbitration must come forward with sufficient facts to place the entitlement to arbitration in dispute." *Id.* (citing *Chorley Enters.*, 807 F.3d at 564).

Arbitration is a matter of contract, and courts "must put arbitration agreements on equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). Whether a contract is enforceable is governed by the contract formation and interpretation principles of the forum state. *Cara's Notions, Inc. v. Hallmark Cards, Inc.*, 140 F.3d 566, 569 (4th Cir. 1998). When determining the scope of a valid arbitration clause, however, federal courts apply the "federal substantive law of arbitrability." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 n.4 (4th Cir. 2000) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

**C. Plaintiffs' Claims are Subject to Arbitration**

Under the four factors listed above, the existence of a dispute between the parties (factor one) and plaintiffs' refusal to arbitrate (factor four) are not at issue and are undisputed. The third factor, which considers the relationship of the transaction to interstate commerce, is also satisfied. The FAA defines "commerce" as "commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia." 9 U.S.C. § 1. Congress exercised "the broadest permissible exercise" of its Commerce Clause power, and "it is perfectly clear that the FAA encompasses a wider range of transactions than those actually 'in commerce'—that is, 'within the flow of interstate commerce.'" *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (quoting *Allied-Bruce Terminix Cos. v. Dodson*, 513 U.S. 265, 273 (1995)); *Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 (4th Cir. 2012)

("[T]he reach of the [FAA] statute is broad . . . . The Supreme Court has interpreted this provision as exercising the full scope of Congress's commerce-clause power."). Diverse citizenship by itself is not enough to determine the nature of the transaction. *Rota-McLarty*, 700 F.3d at 697. Even so, this case involves a Maryland company contracting to build a house in Virginia. The interstate nature of the transaction is apparent. *See, e.g.*, *Stinson v. Am. Home Place, Inc.*, 108 F. Supp. 2d 1278, 1281 (M.D. Ala. 2000) ("The requirement of interstate commerce is met here because AHP, a Georgia corporation, contracted with Stinson, an Alabama resident, to build a home for Stinson in Alabama, and because the materials used in the construction of the home traveled in interstate commerce.").[2]

The second factor—the existence of a written agreement that covers the dispute—includes two aspects: (1) whether there is a valid and enforceable arbitration agreement, and (2) whether the claims asserted in the suit are within the scope of that agreement. *Univ. of Va. Patent Found. v. DynaVox Sys., LLC*, No. 3:15CV00015, 2015 WL 5794533, at *2 (W.D. Va. Oct. 1, 2015). Plaintiffs do not dispute that their claims are within the scope of the Sales Agreement and the Limited Warranty Agreement. The Sales Agreement provides that "*[a]ny dispute* arising under or pursuant to this Agreement, *or in any way related to* the Property and/or with respect to any claims arising by virtue of any representations alleged to have been made by [Defendant], or any agents and/or employees thereof . . . shall be settled and finally determined by arbitration and not in a court of law." (Compl. Ex. A ¶ 19(b) (emphasis added).) Courts have

---

[2] Further, the FAA does not impose a burden on the party invoking the FAA to put forth specific evidence proving the interstate nature of the transaction. *Rota-McLarty*, 700 F.3d at 697. Plaintiffs did not come forward with evidence to rebut jurisdiction under the FAA. "Where . . . the party seeking arbitration alleges that the transaction is within the scope of the [FAA], and the party opposing application of the [FAA] does not come forward with evidence to rebut jurisdiction under the federal statute, we do not read into the [FAA] a requirement of further proof by the party invoking federal law." *Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d 974, 978 n.4 (4th Cir. 1985).

held that similar language brings "the broadest possible range of claims within the scope of arbitration." *Univ. of Va. Patent Found.*, 2015 WL 5794533, at *3 (compelling arbitration pursuant to agreement providing that "all other claims, disputes or controversies arising under, out of, or in connection with" the agreement shall be resolved by final and binding arbitration); *Hawkins v. Fishbeck*, 301 F. Supp. 3d 650, 656 (W.D. Va. 2017) (compelling arbitration pursuant to an arbitration clause providing that "any controversy, disagreement, or dispute arising out of or related to this Agreement, the interpretation of any of the provisions hereof, or the action or inaction of a party to this Agreement hereunder shall be submitted to final and binding arbitration"); *Long v. Silver*, 248 F.3d 309, 316 (4th Cir. 2001) (discussing language that covered "any and all disputes . . . arising out of or in connection with this Agreement"). The language in the Limited Warranty Agreement is similarly broad. (Compl. Ex. B ¶ VI, D ("[D]isputed items shall be submitted for binding arbitration by QBW to Construction Arbitration Program.").)

Plaintiffs' sole contention in opposition to the motion to compel is that the arbitration clauses are unconscionable, and as a result, unenforceable.[3] Under Virginia law, a contract is unconscionable if it is "one that no man in his senses and not under a delusion would make, on the one hand, and as no fair man would accept, on the other." *Fransmart, LLC v. Freshii Dev't, LLC*, 768 F. Supp. 2d 851, 870 (E.D. Va. 2011) (quoting *Mgmt. Enters., Inc. v. Thorncroft Co., Inc.*, 416 S.E.2d 229, 231 (Va. 1992)). The substantive terms of the contract must be so grossly inequitable that it "shocks the conscience." *Id.* at 870–71. The party asserting unconscionability of a contract has the burden of proving that the contract is unconscionable by clear and

---

[3] At the hearing, plaintiffs argued that the clauses are unconscionable because the clauses could have been drafted to be more fair to plaintiffs. That, however, is not the applicable standard.

convincing evidence. *Id.* at 871 (citing *Pelfrey v. Pelfrey*, 487 S.E.2d 281, 284 (Va. Ct. App. 1997)).

Plaintiffs argue that the agreements are contracts of adhesion, defined as a "standard form contract, prepared by one party and presented to a weaker party—usually a consumer—who has no bargaining power and little or no choice about the terms." *Zaklit v. Global Linguist Sol., LLC*, 53 F. Supp. 3d 835, 845 (E.D. Va. 2014). The use of an adhesion contract is a "relevant factor to consider" in determining whether a contractual provision is unconscionable, but adhesion contracts are not per se unenforceable. *See Flint Hill School v. McIntosh*, Record No. 181678, 2020 WL 33258, at *5 (Va. Jan. 2, 2020) (unpublished opinion) (citing Restatement (Second) of Contracts § 208, cmt. a (1981)). Because "the bulk of contracts in this country, if not every Western nation, are adhesion contracts, a rule automatically invalidating adhesion contracts would be completely unworkable." *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 88 (4th Cir. 2005) (applying West Virginia law). Plaintiffs, presumably the "weaker" parties, "cannot simply rely on inequities inherent in the bargaining process, but must identify the existence of unfair terms in the contract." *Id.* There must be an examination of the "entire contract, the nature of the contracting parties, and the nature of the undertakings covered by the contract." *Id.*

Plaintiffs contend that the clauses are unconscionable because under the Limited Warranty Agreement, QBW retains the sole right to designate the arbitration service. (Compl. Ex. B ¶ VI, D ("[D]isputed items shall be submitted for binding arbitration by QBW to Construction Arbitration Program, administered by DeMars & Associates Limited (CAP-HOMe), *or such other independent arbitration service as may be designated by QBW*, for resolution in accordance with the rules and regulations for home warranty disputes of CAP-

HOME or such other service.") (emphasis added).) Thus, plaintiffs speculate that QBW could elect to use an arbitration service in Los Angeles, or Denver, or Houston, or anywhere else in the United States, effectively pricing plaintiffs out of the process due to travel costs. Also, plaintiffs complain that they are unable to choose, or participate in choosing, an arbitration administrator, do not know the procedures, rules, and regulations involved in the process (such as the right to counsel), and are not aware of the costs involved. As for the Sales Agreement, plaintiffs note that the Limited Warranty Agreement is referenced therein,[4] but they make no specific argument regarding why the Sales Agreement's arbitration clause is unenforceable.

These terms are not so one-sided as to "shock the conscience." To begin, plaintiffs offer only speculation that QBW would choose a distant arbitration forum. In fact, the Limited Warranty Agreement plainly states that arbitration "will take place at the home," and further, if there is an appeal, "CAP-Home, or other such service, will appoint an Appellate Arbitrator and schedule a hearing at the home." (Compl. Ex. B ¶ VI, D.) In this respect, plaintiffs' situation is clearly distinguishable from the principal case they cite in their brief. *See Philyaw v. Platinum Enters., Inc.*, No. CL00-236, 2001 WL 112107 (Va. Cir. Jan. 9, 2001). The plaintiffs in *Philyaw*—purchasers of a used car—were from Virginia, but the arbitration clause *required* that arbitration take place in Los Angeles. *Id.* at *2. Thus, the court reasoned that "the arbitration provision effectively eliminates any remedy for consumers" because "[c]ommon sense dictates that retail purchasers such as the Philyaws could not afford the time and expense to go to Los

---

[4] The Sales Agreement states, in pertinent part, that plaintiffs "will be provided with a Ten Year Limited Warranty Agreement (the 'Limited Warranty Agreement') in connection with the purchase of the Home. You will execute your enrollment form and the Limited Warranty Agreement at Settlement, and a copy of the Limited Warranty Agreement is attached to this Agreement as an Addendum." (Compl. Ex. A ¶ 19(a).) The court does not agree with plaintiffs' apparent contention that, pursuant to this language, if the arbitration clause in the Limited Warranty Agreement is unenforceable, then the arbitration clause in the Sales Agreement is also unenforceable.

9

Angeles to arbitrate a claim arising from a used car sale in Virginia." *Id.* at *3. The provisions at issue in this case, by contrast, do not mandate that disputes be arbitrated on the other side of the country; in fact, they require the exact opposite. Plaintiffs' speculative contention about being "priced out" of arbitration due to travel costs is belied by the plain language of the provision cited in support of their argument. Additionally, nothing suggests that the rules and processes governing the arbitration service to be chosen by QBW would be one-sided, unfair, or biased in favor of Dan Ryan. *See, e.g.*, *Stinson*, 108 F. Supp. 2d at 1286 (finding an arbitration clause in a home construction contract to not be unconscionable because plaintiff provided "no evidence that enforcement of any particular feature of the arbitration clause in his contract . . . would cause him a specific injury. Nor has he demonstrated that enforcement of the arbitration clause will strip him of a remedy that he could access through adjudication of his claims by a federal court") (applying Alabama law); *Mansfield v. Vanderbilt Mortg. & Fin., Inc.*, 29 F. Supp. 3d 645, 657 (E.D.N.C. 2014) (enforcing arbitration clause in home sale contract because "the arbitration agreement terms are not so 'harsh, one-sided, and oppressive' as to be substantively unconscionable") (quoting *Tillman v. Commercial Credit Loans, Inc.*, 655 S.E.2d 362, 370 (N.C. 2008)); *LaPoint v. John Wieland Homes & Neighborhoods of the Carolinas, Inc.*, C/A No. 0:08-3553-CMC, 2009 WL 10684895, at *7 (D.S.C. Dec. 1, 2009) (finding arbitration clause in home sale contract enforceable because on "the rare occasion when a court has determined that arbitral procedures render an arbitration agreement unenforceable, the one-sided provisions have been so pervasive and extreme that the arbitration provision created a 'sham system unworthy even of the name arbitration.' . . . By contrast, Plaintiffs in this action have not demonstrated any comparable level of bias") (quoting *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999)) (applying South Carolina law).

Further, plaintiffs do not offer any evidence in support of their argument that there was "grossly unequal bargaining power at the time the contract [was] formed." *Mobil Oil Corp. v. Earhart Petroleum Inc.*, No. 99-2093, 2000 WL 530351, at *4 (4th Cir. May 3, 2000) (Unpublished) (quoting *Envirotech Corp. v. Halco Eng'g, Inc.*, 364 S.E.2d 215, 220 (Va. 1988)). By all accounts, plaintiffs were not under duress to buy this property, and the terms of the contract, including the arbitration clause, were negotiable. *See, e.g.*, *Bramow v. Toll VA, LP*, No. 32714, 2005 WL 1444527, at *4 (Va. Cir. Feb. 7, 2005) ("I cannot agree that it is common knowledge, or generally accepted, that the seller of a parcel of real estate, even if it is a seller of many parcels, commands so strong a position that the potential purchaser has little or no bargaining power or choice about the terms of the sale.").

For these reasons, the court concludes that the arbitration clauses in the Sales Agreement and the Limited Warrant Agreement are enforceable and plaintiffs' claims are arbitrable. Thus, plaintiffs will be compelled to submit to arbitration.

### III. CONCLUSION

Dan Ryan's motion to compel arbitration will be granted. The court will enter an order staying these proceedings and directing the parties to engage in mandatory contractual arbitration.

Entered: March 11, 2020.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge